Cupja, per
Johnson, J.
The first ground of this motion has not been insisted on and is clearly untenable. However the partialities of James M'Dcmall might have been enlisted, in a legal point of view his interest was equally balanced between the contending parties. The result would be the same to him whether the one or the other prevailed. He was a competent witness, therefore, on the principles of the common law. And being called to testify as to the fact of an usury to which , , , . , , , , he was a party he was rendered competent by the tute, unless the lender would have contradicted on oath what he offered to swear and that although he had been a party to the suit. Executors of Thomas v. Brown, 1 M’Cord, 557. Fleming v. Mulligan, 2 M’Cord, 157.
The second ground denies the fact of usury, with respect to which the defendants form three distinct classes.
1. Moffat, who makes the allegation. 2. Tunno and JYapier, Rapeyle and Bennett, whose answers expressly deny it. And 3. Street & Co. and Falk and Cochran, *440 who although they do not, in express terms, deny it, yet do not admit it. James M’Dowall was the only witness who testified as to this fact. He states in substance that he was in want of money, and as the means of raising it put his notes, endorsed by the present complainants, into the hands of brokérs, who accounted with him for the amount by deducting generally double bank discount, and sometimes more; but by whom the notes were discounted, or on what terms, he was wholly ignorant. This evidence is unsupported by any other witness, nor do the circumstances necessarily tend to that conclusion, especially as the broker, Immanuel, who was then living, might have been called in aid of the other proof, if the fact existed. Admitting, therefore, that the conclusion of usury might possibly have been deduced from the evidence of James M’Dowall, yet the defendants designated as the second class would have been, protected under the rule which obtains in this Court, that where a defendant denies positively a fact stated in the bill it is conclusive unless contradicted by two witnesses, or by one witness and circumstances. The evidence of James M’Dowall does not, however, establish the fact of usury. He does not pretend to know on what terms the notes were originally negociated — all that he professes to know about it is, that the brokers employed by him accounted with him for the proceeds at an usurious rate, and whether honestly or not he was equally ignorant. They were his agents, and if no usury entered into the original negociation of the notes the contract was obligatory on him, and whatever fraud or cozenage they may have practised on him cannot be set down to the account of those who discounted the notes. The fact of usury cannot therefore be fairly deduced from this evidence, and whatever suspicions may arise out of the eva-s^ve answers of the defendants constituting the third class, they are protected by the rule that requires proof of every allegation that is not admitted by the answer.
where the defendant denies positively a fact stated in the hill it is conclusive unless contradicted by two witnesses, or by one witness and circum- . stances.
Every allega-provecUhat^s not admitted swer.6 an"
It seems the Court of Equity may set aside an usurious contract for the benefit of creditors where the usury is so excessive as to furnish a strong presumption that. the object was fraudulent.
Unsafe to lay down a general rule on the subject.
A debtor-may make an assignment of his property to particular creditors in preference to others: though it may be dishonest in the debtor 1 it is not void among the creditors.
Third. The disposition made of the preceding ground renders the consideration of the third ground unnecessary. That cases might exist, in which the Court would tye justifiable in setting aside a contract tinctured with dsuryin favour of third persons (creditors), may be readily conceived; as where the excess was so great as to furnish strong presumptions that the object was fraudulent. But it would be difficult, if not impossible, to lay down any rule upon the subject; it is indeed the language of Courts of Equity, that it would be unsafe lest it should give a covering to the artifices of avarice.
The only remaining question necessary to be considered in this case is, whether the Court had the power to place the defendant, Moffat, on a footing with the creditors who are preferred in the deed of assignment. The foundation of so much of the decree as relates to this subject is the supposed usury and fraud which entered into it. The opinion already expressed has removed this foundation, and if the superstructure rested solely on it, it would as a necessary consequence fall with it. But laying these considerations out of the question, it has been urged with much earnestness, that supposing all the transactions perfectly fair and legal, yet the fact of appropriating the whole of his funds to the payment of debts due to favourite creditors to the exclusion of others equally meritorious, is, in an equitable point of view, a, fraud against which the Court ought to relieve. If we were left to reason on this subject, without the aid of the lights with which experience has furnished us, it would be difficult to resist this conclusion. Reasoning a priori we should, I think, generally conclude, that where the estate of a debtor was insufficient to satisfy all his creditors il ought to be distributed amongst them in equal proportions, without regard to the nature of the demands or legal priorities. But beautiful and fascinating as t system built upon the basis of natural justice may be *442 and wide as the Courts of Equity, in this and every other country where they exist, have opened their doors to admit the idol, a necessity growing out of public expedience has compelled them to preserve a few land marks by which their powers are circ umscribed. Amongst these may be safely reckoned the principle, that they are bound by the positive rules of law. That a debtor may pay one creditor, that he may give him a lien on his property, or make an assignment for his benefit, are conclusions that admit of no controversy. It is the practice of every day, and universal consent has stamped it with its sanction. Fraud, it is said, however, will vitiate any contract, and on this ground Moffal claims to set aside the deed of assignment made by James M’Dowall, and to come in on a footing with the preferred creditors. Let us suppose that it was dishonest and unfair in James M’Dowall to make this difference among his creditors, how, let it be asked, does that circumstance affect the favoured creditors 9 There is nothing in the most rigid code of morals which prohibits a creditor from using legitimate means to secure a doubtful debt, or to protect himself in the enjoyment of the fruits of his exertions. And however we may be disposed to censure the conduct of James M’Dowall, there is no reason why we should visit his sins on the heads of his creditors, who have done nothing illegal or morally dishonest.
So any other lien may be given preferring a creditor.
The decree of the Circuit Court is reversed, and it is ordered and decreed that the complainants do apply the funds assigned to them in the manner provided for in the deed of assignment — that the defendant, Moffat, pay his own costs, and that all other costs be paid out of the funds in the hands of the complainants.

Decree reversed.